This is quite a place. I don't know if any of you remember being here before this change, but this is really remarkable. It looks like a courtroom now. Wonderful change. We'll start with the first case, CMR v. The City of Philadelphia. Mr. Leonard, good afternoon. Good afternoon, Your Honors. I am Tom Leonard. I represent Waterfront Renaissance Associates, the only developer in the history of the World Trade Organization that had a World Trade Center project that he advanced or my client advanced, shut down by the city in which it was located. And I guess before I advance, Your Honor, I'd ask that I reserve three minutes for rebuttal. That's fine, sir. Beginning in about 1988, my client, with the act of support and encouragement of the City of Philadelphia, assembled a 5.3-acre site of land on Columbus Boulevard, which was formerly called Delaware Avenue, on the land side of the river to begin planning the World Trade Center. Let me ask you, we're very familiar with the facts of the case, and I wanted to get to it because your time is somewhat limited, to the challenge that you have interposed to the city ordinance that imposed a 65-foot height restriction. And I couldn't help thinking in reading the briefs and my own thinking about the case that this is really an as-applied challenge rather than a facial challenge. That's the way I was looking at the case, and I want you to address why it's presented as a facial rather than as an as-applied challenge. Fine, Your Honor. The March 2006 ordinance that we are dealing with here was an ordinance which was passed without public notice, without debate, without consideration, at the request of the district councilman, pursuant to councilmanic privilege, since it only applied to his district, and it was passed without examination. And it wasn't new legislation. What the ordinance did was to take an existing overlay, which applied to the old city section, a residential section of Philadelphia, and move it north to apply to the World Trade Center planned development site and some other sites, but it exempted other sites further north that were owned by the city or that were owned by developers more familiar to the councilman's office. Your chief argument is, or problem, is the 65-foot height restriction, isn't it? No, Your Honor. Our argument focuses on the application of the old city overlay to our site. The old city overlay had two restrictions that applied to our site, both of which affected our ability to build a high-rise. The first was the 65-foot height restriction that you make reference to. The second was a 70-foot width restriction, which has the same impact. When the footprint is that small, you can't do high-rise construction. It's interesting, though, that you're talking about how these restrictions affect you, which goes back to my initial question. Why isn't this an as-applied challenge versus a facial challenge? It's facially unconstitutional for a variety of reasons, but I think even if it's as-applied, Your Honor, we come out in the same place. Well, I don't know. I mean, your complaint presents this as a facial challenge. The district court treats it as a facial challenge. I want to just read briefly, and then I'll get off the subject, this comment by the Supreme Court. This is in the case of Washington State Grange versus Washington State Republican Party. There the majority says that a plaintiff can only succeed in a facial challenge, and that would be you, by establishing that no set of circumstances exists under which the act would be valid, and the law is unconstitutional in all of its applications. It seems to me you've got a tough row to hoe for us to conclude that your facial challenge succeeds, given the language of the Supreme Court. I agree, Your Honor. I think that if it's facial or if it's as-applied, we reach the same result. There are a few twists and turns that are a little different as we progress towards that result. Isn't the theory, though, that it's unconstitutional on its face as applied to you, or it's unconstitutional on its face no matter what's done with respect to you if it's enforced? The mere enforcement of the 65 feet, the mere enactment of the 65-foot limitation caused you an injury, and while it was later removed, you were injured at that time, and that may have made your damages speculative, but perhaps not as phenomenal damages. In other words, that the wrong was committed when it was adopted.  Your Honor, clearly the application of the statute to us precluded us from getting the financing we needed to proceed because once the city said you couldn't build high-rises, the financial support from the banks that we had sought and received dissipated. Let me follow up on a point Judge Greenberg just made. You wouldn't be entitled to damages, either compensatory or nominal damages, if this is a facial challenge, right? If it's a facial challenge, you just want declaratory relief. You want us to say it's unconstitutional, the statute would be rescinded, and you can go about your project. But you wouldn't be entitled to damages, would you? We would, Your Honor. We would be entitled to an opportunity to demonstrate our actual out-of-pocket damages, the losses incurred by that statute. I'm sorry, on a facial challenge? I thought all you want is us to declare the statute unconstitutional. We are also seeking money damages, Your Honor. All right. Well, I noticed the court said something about damages, if I'm not mistaken, the district court. And the district court said that you would not be entitled to compensatory or nominal damages because you never applied for a variance or a permit. Am I correct about that? You are correct, Your Honor. It said compensatory damages. I don't think the district court reached the question of nominal damages, and I think that was one of the mistakes the court made. We would be entitled under Supreme Court precedents and precedents of this court to nominal damages for the deprivation of our rights caused by the statute, even if we couldn't prove compensatory damages. But the unusual procedural aspect of this that's worth focusing on. But you say you would be entitled to those damages, but not because you didn't apply for a permit or a variance. Is that what you say, District Court Erdin? We contend that we can be facially harmed, and we contend that had we been permitted a damage hearing, as opposed to a brief on mootness where the court went beyond the mootness question, deprived us of an opportunity to present damages in a summary judgment motion or something else, and ruled that because we had not sought a permit, a building permit, our damages had to be speculative. We don't believe that you have to engage in a futile act. We don't believe that we have to seek a building permit. Our damages were real based on the passage of the statute. We lost our funding. We lost our financing. Mr. Leonard, it seems to me that you also have a big problem here with the mootness question, that in 2010, the height restriction as it applied to your property was removed by a subsequent city ordinance. Was it not? It was, Your Honor, but we challenged the application of the old city overlay to our project, and the old city overlay had the 65-foot restriction and the 70-foot width restriction. Okay, but in your And the 70-foot width restriction was not removed. But in your complaint, and I read it anew over the weekend, your third amended complaint, which was the complaint that you were last proceeding under, you never once used the word width, and that was one of the basis for the district court concluding that they were not going to allow the amendment to the third amended complaint. Was it not? It's correct, Your Honor. That was one of the basis, and you're correct that we did not focus on the width restriction per se because the width restriction is the same as the height restriction. It precludes high-rise development. Our challenge in our complaint, if you read it anew, was to the extension of the ordinance to include our property. I understand. It wasn't to the 65-foot height restriction. It was to the extension of the ordinance, which included both. The effect of either is to prevent high-rise development, and we did use as a shorthand nomenclature the fact that this height restriction reduced our ability to build a high-rise, but our challenge in the complaint was to the extension of the overlay, which included both, and there is no contention that the 70-foot restriction has been removed. There's no contention that the city planned not to enforce it. There's no contention that the 70-foot width restriction in the overlay changed our theory. But somewhere along the way, had you included the width restriction, is it 40 feet? 70 feet, Your Honor. 70. If you had included a 70-foot width restriction in your pleadings, in your complaint, just as you did with the 75-foot height restriction, the court might very well have, or was it 65 feet? 65. 65-foot. The city might well have included it in the ordinance, which rescinded the height restriction. Your Honor, I can't speculate as to whether or not the city would have included it, but I can tell you at the depositions. It's really a point of notice. Nowhere in any of the pleadings was your problem with the width restriction presented. Our focus was on the application of the overlay to our site, and the overlay contained both. We focused on the fact that it precluded high-rise development, Your Honor. We didn't focus on one to the exclusion of the other. At depositions, we specifically questioned the director of the planning commission, the heads of the civic association about the 70-foot width restriction. It's not that the city was not aware of it. It's not that it wasn't part of the case. The nomenclature on high-rises may have confused the judge, but the fact of the matter is we challenged the extension of the overlay. How was the city aware of the width restriction? How was it? I mean, they passed the legislation. They didn't really pass the legislation. They extended the zoning district to include your property is what they did. Well, they passed the legislation originally. I think we have to – Let me ask you this question, Mr. Leonard. You know, if I was sitting here as a district court judge, I might agree with you if you were trying to make a motion to amend the third amended complaint based on what had transpired. But how is the district court – how is Judge Stengel's decision not to allow that after he was engaged with this case over a period of four years? How is that an abuse of discretion? Well, the federal rules of civil procedure and the case law all favor liberal amendments. This was merely a clarification. It didn't change the theory of the case, and there was no undue difficulty imposed on the city. At the same time the judge denied our motion to clarify that the 70-foot width restriction was part of the challenge, he granted a motion that required six months additional discovery on a new challenge to the Central Riverfront Overlay Ordinance, which had subsequently passed. The city never contended the 70-foot didn't apply. It's still the law today. And there was no change in theory. There was no undue influence. There was no prejudice. There was no undue delay. There was no surprise. All of the elements that we look at in determining whether or not we should grant this were present. This was not a moot claim. The city only took out the 65-foot height restriction and not the width restriction. We still couldn't construct the high rises that we worked with the city for 18 years to plan and develop. Yeah, but for us to reverse the district court, we have to find his act was an abuse of discretion. I guess I'm having trouble finding how what you described is an abuse of discretion. Well, your review is de novo, Your Honor. He failed to comply with the review. An abuse de novo on denying a motion to amend? I don't think you'd meet that. I stand corrected, Your Honor. The review is abuse of discretion. It is abuse of discretion, Your Honor. I apologize. And that's my simple question. Maybe you answered that in what you just said, but that's my dilemma as well as my question. I just had one question. Counselor, you're seeking real damages, what we would call compensatory, but also nominal damages. If the only thing you could get on a remand would be a claim for nominal damages, that might be significant, wouldn't it, because of council fees? We may be entitled to council fees also, Your Honor, so it would be significant. So that nominal damages is not necessarily a nominal issue. That's correct, Your Honor. That's our belief, and the fact that the judge missed the idea that we might be entitled to nominal damages, I think, was clearly erroneous. So this is, even if it's just nominal damages, this appeal essentially involves what could be pretty significant, because there must be pretty hefty fees by now. Even though we're very efficient, Your Honor, I think our client would agree with you. I have just two questions. I know your time is up. We'll give the other side a little extra time also. But the response you gave to Judge Fischer about why it was an abuse of discretion, would you restate that for my benefit? Why did the judge abuse his discretion in denying the motion to allow for you to amend the complaint? I think it would be the fourth time. Well, the judge found that we were changing our theory. And although the nomenclature may have changed, we weren't changing our theory. Our theory in the complaint always was that we wanted the extension of the ordinance stricken as it applied to our site because it was unconstitutional, because it was arbitrary and capricious, because it was based on mistake. For a variety of reasons, we said this overlay extension shouldn't apply to our site. The overlay extension contained both. So the judge found that we were changing our theory when, in fact, we were not changing our theory. But even if there were a change of theory, the law requires undue difficulty. The city has not demonstrated any. The court has not found any. There was no additional discovery required. There was no delay. There was no surprise. There was no reason not to grant it, especially when the judge permitted an amendment that extended the entire process an additional six months on the new central riverfront overlay. So there was no undue difficulty, and it should have been granted. Could it have been denied solely on the basis of the passage of time and the fact that you've already had a number of amendments to your complaint? And that fact should have been brought in much earlier in the case. Could it have been denied on that basis? We think the fact was brought earlier in the case, Your Honor. I think that's part of the point. It was. We were seeking merely to clarify that it had always been part of the case. And there was no undue delay because this whole question arose after the councilman passed the revision of the 65-foot height restriction. We were at a scheduling conference with the judge, and the city raised the question that our challenge was moot because the restriction on the height had been removed. The judge seemed fascinated by that, which surprised us, and we asked for Lee to brief that issue. It was in the context of that briefing, not in summary judgment motions, where the judge not only ruled that our claims were moot, even though the 70-foot restriction still applied, but he also then went into the damage rulings, which we thought were not even before. We thought there would be a summary judgment motion on damages. We thought we would be able to prove whether or not we had real damages, whether we had nominal damages. And the judge tumbled to that whole issue in the context of the mootness debate and declared that not only was our claim moot, but that we had no damages because they were speculative. Okay. Thank you very much, Mr. Leonard. Thank you, Your Honors. We'll get you back on rebuttal. Ms. Isfan, did I pronounce that correctly? Isfan? Yeah. Yes, Judge Fuentes. May it please the Court, I'm Janice Isfan, and I represent the city. And I guess since Mr. Leonard's ending with the issue of leave to amend, I'll start with the issue of leave to amend because I hear a number of things that I'd like to clarify. Yeah, he made a very good point about prejudice, and I was looking for how the city would have been prejudiced by granting the motion. Maybe you can tell us how. I'm happy to answer that, Judge Fuentes. But I guess the first thing I'd answer is I keep hearing the phrase undue difficulty, and I'm not familiar with that phrase in the case law. Well, how about undue delay? Right. What I'm familiar with is the phrase of undue delay, and I'm familiar with the cases of Lorenz and Oliva, which make perfectly clear that all we have to accept – But how can you claim undue delay if there's no prejudice? I believe that Lorenz and Oliva both make clear that there can be undue delay irrespective of prejudice. And further, in the way – Well, that sounds like you waited too long, period. You just – But not just waited too long, but – Undue delay just sounds like you just reached a point where you just went too far, you didn't do anything, and that's too bad. But more important, that you had reasonable opportunities to inject the issue into the case, and you didn't – So prejudice is not a factor? That prejudice doesn't have to be a factor in that situation, but, in fact, there was also prejudice in that case. But, you know, in this case – In this case. In this case, which we're looking four years, but this whole controversy spanned more than that, 12 years, 15 years. The complaint was about extending the ordinance to this property. It wasn't about enacting a new ordinance. This wasn't like a new ordinance was proposed for the Old City District and for the Riverfront District. It was an extension of the ordinance to this property. Wouldn't you agree with that? That was the essence of the complaint? Look, we woke up one morning and we found out now we are subject to the zoning restrictions that applied to the Old City neighborhood. Yes, the Old City overlay. Okay, so that was the essence of the case. And part of that ordinance, there were a number of provisions of that ordinance. There was heights, there was width, there was setbacks, there were side yards, there were – you named the different provisions. Okay, now, at the, you know, last hour, I think everybody agreed with that. They said, well, we're not going to complain about height. We're complaining about width. How is that incongruous and different from what their initial and main complaint was? That this ordinance impacts us, both as to height, width, and for other reasons. Judge Fischer, from the very beginning of this case, they were – it was crystal clear that they defined this case not that we're complaining about the ordinance, we're complaining about the overlay, but we're complaining about a height restriction. Well, they were essentially complaining that the height restriction meant, whatever the restrictions were, they couldn't build a 28-story tower. And the way that they characterized that complaint was, we are complaining about a height restriction. Well, isn't that nomenclature? Isn't that more nomenclature than anything? It's the way that they define the theory of their case. If you go back to 1249 in the record, which is their letter to Councilman DiCicco, which kicked off their complaint in this case, they say we're complaining about a height restriction. We can't build a building as tall as we need to build it to get the return. Every complaint they filed in this case, they always complained about the height restriction. They always referred to this ordinance as a height restriction. Every pleading they filed in this case, until they finally interjected a complaint about the width restriction, and they complained about a height restriction. The city did concede that it made a mistake when it included in an ordinance a height restriction. Is that correct? There's a quote from them. I mean, this was on a – The city councilman said it was a mistake. There's a quote from him from a deposition. I mean, this is – that part of the ordinance never went to a summary judgment proceeding, so there's very little development of the facts, so we haven't come back to discuss it, and I'm totally confident if it ever does go to summary judgment. But an ordinance was passed that imposed a height restriction. Yes, and I guess our point, which, you know, we've made in the brief, is we don't know what mistake means. Mistake could be this is the overlay, and if I'd known that it covered WRA, I might have pulled it because we were working with you. We don't know what mistake means for purposes of getting past a substantive process. Is it the city's position that you meant to apply the old city zoning restrictions to this property? I'd have to refer to documents outside the record to discuss it because – You would? I'd have to refer to documents that are outside the record to discuss it because – No, the substantive issues on the March 2006 ordinance aren't at issue here because we never got to – we never got past the 12B6 motion on the March 2006 ordinance. Well, it seems to me they're at issue as it relates to the amendment, the motion to amend the third complaint. Oh, yes. Yes, absolutely. But not in terms of that issue of the mistake. I mean, I can explain what – I don't want you to go out – Not in the deposition, but there's one page of the deposition that's in the record before this court. Is the city aware that the waterfront appellants intended to erect a 28-story tower, one or more on this property? Yes, and I guess one thing I wanted to explain in terms of the prejudice is the prejudice to us comes in terms of damages. Yes, I'm not an engineer. I'm an appellate attorney. I'm not even a zoning attorney. And I suppose I could concede that the footprint of width does have some impact on height. Well, you knew where I was going with that question. Right, but – But now you tell me you're not an engineer, so you can't answer the question. But I can assume that width does have some impact on height, but it doesn't have the same impact as the height restriction. I don't know quite – I could understand economically, but as a physical engineering matter, why couldn't the building – look at the Washington Monument, for example. It's much taller than 65 feet, but it surely isn't 70 feet in width. So I would think in an engineering sense it could be done. However, it might be that as a financial matter it's not viable. That's the issue. So, I mean, I thought that, well, I can see a distinction there because it could be done. It's saying, look, you can build taller than 65 feet, but you still have to be 70 feet in width. That might not be very good for money, but it could be done, I think. It would look like a gigantic toothpick. Yes, and those are the types of things that I'd like to go back for damages purposes and ask our experts and ask witnesses. I wondered why you gave away the point, I thought. I don't remember whether I wrote this or not, but I might have written this. In Curitin we said the district court may deny leave to amend if a plaintiff's delay is undue, motivated by bad faith, or prejudicial. So, the point of it is that under that undue, the delay is undue. If it's not undue, now we go to prejudice. But if it's undue, even if there is no prejudice, it was an undue delay, the court can deny it. Yes. Oh, I'm not giving away that point at all, Judge Greenberg. I guess my point is I think that we meet either. There's undue delay here and there's prejudice. Why is it undue in this case? At what point does it become undue? I think when you've had four years, when you've had three amended pleadings, when you've filed multiple motions to dismiss in various pleadings and you've never mentioned the word with and you've always defined your claim in terms of a height restriction. And further, I guess the more important point is Judge Fischer's point, which is if you were starting out at the district court, you might have had the discretion to go the other way. But I guess what I'd point out is this is a district judge who was obviously very patient, very patient with hearing new theories, with hearing new claims, with hearing all kinds of things from these parties. I believe there were 248 docket entries in this case. He accepted multiple rounds of briefing. He exercised a lot of discretion to hear all different kinds of things from us. And therefore, when he exercised his discretion not to hear this particular claim, this court should accept that discretion. He was a very patient judge. Mr. Leonard says that if this were taken to be a facial challenge, he would be entitled to damages, compensatory and nominal damages. Could you address that? Yes. May I clarify a couple of other factual points on the width before we leave that point, Judge Fuentes? First of all, I just wanted to clarify something that I'm not sure came through clearly in my brief that Mr. Leonard brought up. And that was this explanation that they didn't realize until we brought the mootness issue, brought up the mootness issue, and they claim it wasn't clear to them until that point that we thought this was only a height restriction case. Because I think it's important when you look at the fact that there was a five-month gap and multiple reasonable opportunities in the briefing for them to come up with width at that point. In April 2010, when the height restriction was amended, was when the briefing began over this issue of mootness. The issue of mootness was raised, and the court raised it, the parties raised it, and we began briefing the issue. Briefs were exchanged, and over the course of the summer, WRA had the opportunity to file six briefs on the issue, including a motion to supplement to add another claim, which was the claim over the CRO ordinance, over the Central Delaware Riverfront ordinance. So they even had the opportunity to supplement another claim and still had not taken the opportunity to supplement with the width restriction claim. And it wasn't until August 26th that they came forward with the motion to supplement to add the width claim. So this notion that, oh, they suddenly realized that we didn't understand what their claim was and then immediately interjected it into the case just doesn't make sense to me. And further, I think it's important when you look at the fact that one of the standards on leave to amend is have you impose an unwarranted burden on the court. And when you look at all that briefing that we did on mootness, I think if you think about the fact that if they had interjected width into the case at that point and if the court had said, okay, now I'll take the width claim and accepted it, there would have been no need for mootness briefing because if there was a width claim in the case, then it wouldn't have been moot. And why would we have needed briefing on mootness? So in that sense, there was an unwarranted burden as well. I wanted to ask you this question. There seems to be considerable case law that says, and I want to quote one of the cases, quote, in certain circumstances, a plaintiff may arguably be injured by the mere enactment of a facially unconstitutional statute. Now, that would apply if it was just a mere enactment, whether or not they applied for a permit. But why wouldn't they be entitled to show that here? Now, you could say, well, it's speculative, the damages, but at least it's the nominal damages. Because if it was unconstitutional, I mean, you can, maybe they can't prove. But why wouldn't they, why aren't they entitled to a trial on that? Judge Greenberg, because they haven't shown an injury here. And I know Mr. Leonard claims to this court. It's a, as Judge Fuentes pointed out, we're talking not as applied, but facially. Why facially could you not be injured by a statute that simply says you can't do what you intended to do? Perhaps leaving aside as an abstract issue, some party may come along someday  In this case, that hasn't happened for the reasons that we've explained. And Judge Fuentes started out this argument discussing the Grange case. And I think this case is the poster child for that. They haven't articulated an injury here when they say, because of the speculative nature of their injury. They didn't articulate an injury. If that was it, because what they articulated, now maybe you're getting into as applied, but what they articulated was that while they were confronted with heavy construction costs beyond they anticipated, this killed the financing and they didn't have all the money in their pocket to do this. So, I mean, that's what they say. But I think what's important is, first of all, this isn't an as applied challenge. Again, it's a facial challenge. And we go back to Grange saying it's the speculative nature of these claims. It's a facial challenge, and I think that's the way the district court was treating it. Was it appropriate for him to say that they're not entitled to damages because they didn't apply for a variance or a permit? It seems to me that that was, I mean, maybe the decision was correct, but the analysis might not have been correct because you wouldn't really apply for a variance if this is a facial challenge. You wouldn't apply for a permit if this is a facial challenge. Right, but then if you're going to claim. You would if it's an as applied challenge, but that's not what the district court said. Yes, and I guess I'd want to make two points on that. First. Please do. If they want to make a damages claim based upon this facial challenge, even assuming that you could, which I know, I mean, that's a complicated issue and we dropped a footnote based on that. We don't see how you could, but basically if they're claiming that, they need to offer some evidence. We're at the end of summary judgment, and the issue did come up. They were on notice. They did offer evidence during the course of the mootness proceedings, and while Mr. Leonard is claiming before this court that they didn't have the opportunity and they wanted the opportunity to do so and they needed another hearing, if you look at the briefing before the district court and the oral argument before the district court, they never asked the district court for an opportunity to present more evidence. They never claimed they needed more time. They did present evidence from the summary judgment proceeding. They did present evidence to the district court. It's only before this court that they've made that argument now. They presented evidence before the district court. This issue was raised before the district court. It's only now that he's claiming that they didn't have the opportunity to do so, and as we explained in our brief, they don't have that type of evidence. Their evidence was completely speculative. It's just based upon the self-serving affidavit of their principal. They have a situation where they lost financing before the height restriction was even imposed based upon their first project. In their second project, before the height restriction was imposed, they hadn't even raised any financing. They've never had an investor step forward and testify, I would have given you money before the height restriction was imposed. Now, because of the height restriction, I'm not giving you money. And furthermore, even if they had come forward with such evidence, another thing they haven't explained is why now that the height restriction has been taken off the table in 2010, they couldn't have raised money after that point. And so for all of these reasons, we just don't see how they have a viable damages claim, and that demonstrates why Grange is correct, that it just doesn't... reflect the fact that you're saying they had to apply for a permit or they had to ask for a variance and be refused before they can even make a claim for any damages. Isn't that the crux of what you're saying? Yes, I think it's kind of both points, Judge Fischer. I think it demonstrates why it's so difficult. It demonstrates my broader abstract issue of why, you know, we don't understand why you should be able to make a claim at all when the law hasn't been applied to you, and why in this particular case they haven't made the point, they haven't proven their point. But if it's clear and the city insists that the ordinance did apply to that property, why did they have to go through what may be construed as a futile act to seek a permit to build a 28-story condominium building when in fact 28 stories would exceed 65 feet in height and 70 feet in width? Why did they have to go through that futile act to be able to step forward and say here is what my damages would be or are? I guess I'm not understanding why it is a futile act, Judge Fischer, particularly in this case where, first of all, they haven't demonstrated that they have any damages. Well, my point is if the law says you can't build a building at 65 feet and you can't build a building at 70 feet in width, why does somebody have to step forward and say I want you to tell us that again in a formal letter denying our building permit? Why should they have to do that to get to the second step, which would be damages? I guess I have two answers to that. First of all, that's just not the reality of how zoning law works. And the law in rightness demonstrates that. The Sam Erick case that we asked you to go through and apply it, that's why we know very well. I understand how the law of zoning works, but I also understand how the law of futility in zoning sometimes works. If you can't do it, why do you put more good money after bad just to get turned down when you know that's what the law says? And they're arguing the law shouldn't have applied to them in the first place. That's what this case is about. Well, that's an applied challenge. But if their challenge is – it's a very basic one, I understand. That ordinance is unconstitutional, and it shouldn't apply to me. It shouldn't apply to anybody. Now, if that's the theory of their case, why do they have to apply for anything? Why do they have to apply for a variance? Why do they have to apply for a building permit and get turned down? So even before you get to the futility issue, they're just saying this is unconstitutional, we want it struck down. They don't have to show that they were rejected by the city in order to raise that argument, do they? But they have a problem at this point because that law has been rescinded. So at this point, they need to show that because of that rescinded law, they've suffered some injury, and that's what they can't show because of the speculative nature of their claim. And I also just wanted to point out, Judge Fuentes, you raised the issue of a declaratory judgment action, and I know we addressed that in our brief. But at this point, because the law has been rescinded, there's no reason for a declaratory judgment action for the same reason that their claim for injunctive relief is new. Because the law has been rescinded, there's no relief to be granted. You mean the height restriction? For the height restriction. But they want the width restriction back in, too. Well, for the same reasons that I've argued on that claim. Let me ask another question, if the court will permit. Why shouldn't they at least be able to say, here's what we think our damages are for being precluded from building this building from 2006 to 2010? Why shouldn't they have standing to be able to at least claim those damages? Because, Judge Fischer, they would need to articulate some theory of damages that would describe what those damages are. I understand they have to articulate a theory. Maybe they can't prove that there was anybody that was, you know, prepared to provide the money. Yes. Particularly during that era. But why shouldn't they at least have their day in court to do that? They did. We came to the end of summary judgment. If they could say that somehow I was injured differently. No, the district court said this case is moot because of the 2010 amendment and therefore there's no injury in fact and therefore you're not going to be allowed to prove damages. And my question is, why at least for that limited time period, 2006 to April 2010, shouldn't they have their day in court as to those damages? Because they never articulated a theory of damages that would have said, they never came forward and said somehow that their damages were any different. That, well, that was a, now it's different in 2012 and if someone had come forward from 2010 to 2012, there's some permanent damage to me that now if I, I can't build the building now because of something that happened. Are you saying they never asked for that? They never asked for that. They never said things are any different from 2010 to 2012 that preclude me from building now. Okay, we need to get back to Mr. Leonard. I'm sorry. No, I'm fine. Thank you. Thank you. Mr. Leonard? Thank you, Your Honors. Mr. Leonard, is that accurate? No, it's not, Your Honor. We actually expected that whatever the decision on the question of mootness was, there would be an opportunity via summary judgment motion or some other motion to address the question of damages and when the judge not only granted the motion as it related to mootness on the height restriction and threw us out on the ordinance in chief, we didn't expect him to then tumble to the question of whether or not all our damages were speculative and that therefore we were out of court and couldn't seek damages. We thought there would be an opportunity to brief that. In the traditional context of a summary judgment motion where you could offer proof. How did you prevail in order to get damages? How would we have prevailed? Well, we could have won the first part of the argument, Your Honor, but even if we lost the first part of the argument, the question of damages because nominal damages have to be considered should have remained and we should have been granted the right to deal with the damage aspect. Well, under what basis would you get nominal damages? The court has held that the United States Supreme Court and this circuit court has held that you're entitled to nominal damages where a constitutional right has been violated even where you can't show real damages. But has it been a determination that your constitutional rights have been violated? Well, Your Honor, our contention on the facial invalidity of the application of the statute really revolves around the question of mistake and I personally visited with the councilman and he told me extending the overlay to our site was a mistake. How do you equate mistake with facial invalidity? I think if a statute passes by mistake, it's on its face arbitrary and irrational and therefore it's unconstitutional, it's facially challengeable and both the councilman and the mayor, I met with the mayor and asked him and he said he would not have signed the ordinance if he had known it extended the restrictions to the World Trade Center site. Facially challengeable does not make it facially invalid. In other words, it could still be a valid statute. And how would you be entitled to nominal fees if that's the case? I don't agree with you that if a statute passes by mistake that it can be valid. I don't understand that at all. I'll tell you why. It's passed. Former President Clinton said signing the Defense of Marriage Act was a mistake. Okay, he says that, you know, he wouldn't do it again. But does that make the act invalid? He signed it. It's the law. What does a mistake mean? I think, Your Honor, you're conflating a political mistake with a mistake in the underlying application of the act. And I think President Clinton was referring to a political mistake or a social mistake. Well, maybe this was a mistake. He knew what was in the act. They didn't know what was in the act. You mean you're saying they didn't realize what it was doing? That's what Councilman DiCicco told me. He didn't know the act. That's one councilman. There's a legislative body that passed upon the ordinance. You have to focus on councilmatic privilege in Philadelphia, Your Honor. The district councilman is entitled to deference by all the other councilmembers and their case law on this when the action only applies to his councilmatic district. So this extension, because it only applied to Councilman DiCicco's district, was not debated by the rest of council. It passed as a result of councilmatic privilege. I don't want to lose sight of the fact of nominal damages. So you're saying because this councilman made a mistake in the passage of this ordinance, you would be entitled to nominal damages? I don't think that's what you're saying, but it sounds like what you're saying. I think that's an argument that we can advance, Your Honor. I think that we have other bases for nominal damages, but I think that's one of the arguments. I would have thought a mistake would mean that the printer made a mistake in printing something and that they passed something that said something, but they didn't intend to say that. To me, that would be a mistake. What he's saying was, you know, I really shouldn't have done this. I maybe should have looked closer to what I was proposing. I think what he says, the restriction should not apply to your site, given that the city was supporting the development of a World Trade Center and we inadvertently did that by mistake. That's arbitrary and irrational. We have to finish up this case and get to two other cases. Could you give us just an idea of what the current status of this project is? Is it just completely on hold or off the table? I don't want any corporate secrets. No, there are no corporate secrets. I'm curious what has happened since the court has decided this case. Essentially nothing, Your Honor. It's very hard to proceed on a major development if the city is not supporting it. That's the reality. Thank you, Mr. Leonard. Thank you. Thank you both for a very well-presented argument. We'll take the case under investigation.